NOT DESIGNATED FOR PUBLICATION

No. 113,959

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LAURIE SHARPNACK,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Opinion filed May 12, 2017. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Kendall Kaut*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., MALONE, J., and STUTZMAN, S.J.

*Per Curiam*: A Shawnee County District Court jury found Laurie Sharpnack guilty of possession of methamphetamine, unlawful use of drug paraphernalia, driving while her license was suspended, driving without liability insurance, and driving with illegal registration. Prior to trial, the district court had denied Sharpnack's motion to suppress the evidence found in an inventory search of her vehicle. Sharpnack appeals, raising seven claims of error. After our review of these claims, we find no error and affirm.

1

FACTS AND PROCEDURAL BACKGROUND

On October 8, 2012, Sharpnack reported to the Topeka Police Department that her vehicle, previously reported stolen, had been recovered. Sharpnack went to the law enforcement center to meet with an officer regarding several items she had found in her vehicle that did not belong to her. Officer John Bernick met with Sharpnack, who said she had uncovered jugs, cat litter, and various cards while searching through her vehicle. Bernick asked her if she had discovered any additional items in her vehicle that did not belong to her, and Sharpnack told him she had not.

Just over 3 months later, on January 18, 2013, Kansas Highway Patrol Trooper Steven LaRow observed a small pickup truck driving on a frontage road with unmarked "poles sticking out of the back of the [vehicle] a pretty good distance." LaRow later testified that he believed the poles extended more than 4 feet beyond the back of the truck bed and thus "need[ed] to be flagged" in accordance with K.S.A. 8-1715. LaRow pulled the truck over for the suspected violation, and he said the driver, who he later identified as Laurie Sharpnack, pulled her vehicle "off [the road] as far as she could," but the vehicle "was still out on the roadway."

Trooper LaRow checked the vehicle information and learned the tag was registered to a Ford Taurus, not the Ford Ranger he had just stopped. When he went to the window and asked for license and registration, Sharpnack admitted her driver's license was suspended and the insurance on her vehicle had lapsed. Trooper Jared Cripe arrived at the scene to assist, and LaRow arrested Sharpnack and placed her in the patrol car.

After a discussion, the officers determined they would conduct an inventory search of Sharpnack's vehicle because "an arrest was made, and there was no other legal driver on the scene for the vehicle. [In addition,] [t]here was no insurance for the vehicle and the

2

tag did not belong to it and the vehicle was partially in the roadway." Cripe first measured the poles that extended from the back of the truck. He later said they protruded 6 feet beyond the tail lights; more than the 4 feet that required a red flag or lights.

Initially, Sharpnack encouraged the officers to make an inventory of the items in her vehicle and expressed concerns that she had "personal belongings such as jewelry that she wanted to make sure [were] in the vehicle and noted." However, as the search progressed, LaRow said he noted that Sharpnack became impatient and suggested that Cripe list the items found in her vehicle as "miscellaneous metal." Beneath the driver's seat, Cripe discovered a small baggie containing a residue that later tested positive for methamphetamine as well as a tin containing two unused glass pipes. Cripe's eventual inventory of the contents of the truck was not as comprehensive as would have been needed to fully protect against theft claims.

Sharpnack filed a motion to suppress the methamphetamine and pipes found in the search. The district court denied the motion, and the case went to trial where a jury found Sharpnack guilty of the crimes charged. The district court sentenced her to an 11-month prison term and granted probation for 12 months. She timely filed this appeal.

ANALYSIS

Sharpnack raises seven issues on appeal: (1) error in denying her motion to suppress; (2) insufficient evidence to convict her of possession of methamphetamine; (3) clear error by instructing the jury that drug paraphernalia included "baggies" but failing to instruct how to determine whether something was paraphernalia; (4) clear error in failing to instruct on nonexclusive possession; (5) error in refusing to give her requested instructions concerning a knowledge requirement for constructive possession; (6) misconduct by the prosecutor in closing argument; and (7) cumulative error that denied her a fair trial.

3

*Denial of the motion to suppress*

Sharpnack contends her motion to suppress was improperly denied for two reasons: first, she asserts LaRow lacked reasonable suspicion to stop her vehicle; and second, she alleges the inventory search was a "mere ruse" that did not "comply with the police department's policies."

When we review a district court's decision on a motion to suppress, we apply a bifurcated standard. We review a district court's factual findings to determine whether those findings are supported by substantial competent evidence. *State v. Neighbors*, 299 Kan. 234, 240, 328 P.3d 1081 (2014). Substantial evidence is legal and relevant evidence that a reasonable person would accept as being adequate to support a conclusion. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015).

Unlike our standard for the factual findings, review of the district court's ultimate legal conclusion is de novo. When conducting this review, we do not reweigh the evidence or assess the credibility of witnesses. *Neighbors*, 299 Kan. at 240. If the parties do not dispute the facts of the case, the question of suppression becomes exclusively a matter of law over which the court exercises unlimited review. *State v. Stevenson*, 299 Kan. 53, 57, 321 P.3d 754 (2014). Because the parties do not dispute the material facts of this case, we review the district court's findings de novo.

*Reasonable suspicion for the stop*

LaRow testified that he stopped Sharpnack because of the poles extending out from the back of her Ford Ranger pickup. He thought the poles appeared to stick out more than 4 feet past the back of the truck, and they did not have the red flag that is required in that situation. K.S.A. 8-1715 sets the standards for marking loads that project beyond the sides or rear of a vehicle. At times when lights or reflectors are not required

4

as markers, the section directs: "There shall be displayed . . . on any vehicle having a load which extends beyond its sides or more than four (4) feet beyond its rear, red flags, not less than twelve (12) inches square, marking the extremities of such load . . . ." K.S.A. 8-1715.

At the suppression hearing, defense counsel questioned LaRow about his ability to determine the poles in Sharpnack's truck extended more than 4 feet beyond the rear. LaRow responded that he had 5 years of experience with the Kansas Highway Patrol and, "based on my training and experience, life experience, I can estimate what a good four feet is for me. That was reasonable suspicion enough to check the length of the poles sticking out of [Sharpnack's] truck." Defense counsel argued LaRow lacked reasonable suspicion to stop Sharpnack because he was "in no position to determine the length of [the] poles that were protruding from the back of [Sharpnack's] car." The district court disagreed, and in denying the motion to suppress, stated:

> "[I]t's real clear to the Court that [LaRow] had reasonable suspicion that there was a violation of K.S.A. 8-1715, that being poles extended past the end of the truck more than four feet without red flags marking those poles. I believe that, certainly with his experience and training, he could make an estimate of what four feet was and he testified to that fact, so I believe there was reasonable suspicion to stop the vehicle."

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." Section 15 of the Kansas Constitution Bill of Rights provides this same protection. *State v. Anderson*, 281 Kan. 896, 901, 136 P.3d 406 (2006). Generally, a law enforcement officer may stop any person in a public place if the officer reasonably suspects the person is committing, has committed, or is about to commit a crime. See K.S.A. 22-2402(1); *State v. Thomas*, 291 Kan. 676, 687, 246 P.3d 678 (2011). An officer also has reasonable suspicion to conduct a traffic stop when he observes a suspect commit a traffic violation. See *State v. Coleman*, 292 Kan. 813, 818, 257 P.3d

5

320 (2011) ("A traffic violation provides an objectively valid reason for conducting a traffic stop."). When considering whether an officer had reasonable suspicion, courts determine "whether [the officer] articulated specific facts which would support a reasonable suspicion" that the person violated the law. *State v. Marx*, 289 Kan. 657, 674, 215 P.3d 601 (2009).

Sharpnack now reprises on appeal the argument she presented unsuccessfully at the suppression hearing, namely that LaRow could not have definitively determined the length of the poles extending from her vehicle. From that, she argues the stop was based on "only a hunch," not the reasonable suspicion needed to initiate a traffic stop. The State counters that there is no significance to LaRow's inability to know, prior to the stop, the precise length by which the poles extended past the truck bed. The training and experience of the trooper, combined with the ability of "most people" to estimate a length of 4 feet, is sufficient to support a reasonable suspicion.

We note that the State also advanced the unsupportable argument that "[i]f the reason for the stop turns out to be correct, then it is unfathomable the original rationale for the stop is not based on reasonable suspicion." If that were true, the most transient hunch, or a purely random guess, would constitute reasonable suspicion to support stopping a driver, so long as some violation was eventually identified.

Certainty about the measurement of the poles prior to the stop is not required. We accept the State's premise that, absent some interfering condition—such as an inability to observe because of distance, visibility, or obstruction—an experienced officer's estimate in this situation may well constitute the basis for reasonable suspicion. Sharpnack cites no problematic condition of that type. As our Supreme Court has stated, since the question "whether reasonable suspicion exists depends upon the totality of the circumstances, a case-by-case evaluation is required." *State v. Moore*, 283 Kan. 344, 359, 154 P.3d 1 (2007).

6

Kansas courts have previously held that an officer's "observation of a moving vehicle which results in the officer's estimation that the vehicle is moving in excess of the posted speed limit may constitute, under the totality of the circumstances, reasonable suspicion that the driver is speeding in violation of the law." *State v. Butts*, 46 Kan. App. 2d 1074, 1085, 269 P.3d 862 (2012); see *Hampton v. State Highway Commission*, 209 Kan. 565, 583, 498 P.2d 236 (1972) ("[W]e long ago recognized that lay opinions on the observed speed of an automobile are proper."). Although vehicle speed is not the issue here, an experienced officer's estimation of length, based on his observation, is a similar question.

In this case, the fact that the poles were later found to extend 6 feet beyond the truck bed does have some relevance—just not that which the State argued. The fact the poles extended 6 feet, rather than 6 inches, bears on our assessment of the reasonableness of LaRow's prestop suspicion and supports his assertion that a reasonable person could suspect the poles were being transported in violation of the statutory requirements.

*The inventory search*

Sharpnack next alleges that Cripe's inventory search of her truck was unreasonable because it "failed to satisfy the criteria for a valid inventory search." As before, our review is de novo. *Neighbors*, 299 Kan. at 240.

Under the Fourth Amendment to the United States Constitution, a search and seizure of evidence conducted without a warrant is per se unreasonable and subject to a few, well-established exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). One exception to the warrant requirement is inventory searches of lawfully impounded vehicles conducted in accordance with standardized procedures. *State v. Teeter*, 249 Kan. 548, Syl. ¶¶ 1, 2, 819 P.2d 651 (1991). These searches serve three main functions: (1) the protection of an owner's property while in police custody;

7

(2) to protect police against claims or disputes over lost or stolen property; and (3) to protect police from potential danger. *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976). Inventory searches are meant to serve these purposes and "'must not be a ruse for general rummaging in order to discover incriminating evidence.'" *State v. Shelton*, 278 Kan. 287, 299, 93 P.3d 1200 (2004).

An inventory search of a vehicle is valid only if law enforcement officers first obtain lawful possession of the vehicle as authorized by statute or ordinance. *State v. Boster*, 217 Kan. 618, 624, 539 P.2d 294 (1975), *overruled on other grounds by State v. Fortune*, 236 Kan. 248, 689 P.2d 1196 (1984). Without that authority, officers may impound a vehicle only if reasonable grounds exist under the totality of the circumstances. *Shelton*, 278 Kan. at 294-95. The Kansas Supreme Court has set forth several factors that could provide reasonable grounds for an inventory search:

> "'"[T]he necessity for removing (1) an unattended-to car illegally parked or otherwise illegally obstructing traffic; (2) an unattended-to car from the scene of an accident when the driver is physically or mentally incapable of deciding upon steps to be taken to deal with his property, as in the case of the intoxicated, mentally incapacitated or seriously injured driver; (3) a car that has been stolen or used in the commission of a crime when its retention as evidence is necessary; (4) an abandoned car; (5) a car so mechanically defective as to be a menace to others using the public highway; (6) a car impoundable pursuant to ordinance or statute which provides therefor as in the case of forfeiture."'" *Teeter*, 249 Kan. at 552.

When an inventory search is challenged, the State bears the burden of proving that an impoundment and inventory search were reasonable under the totality of the circumstances. See *Shelton*, 278 Kan. at 293.

At the suppression hearing, LaRow testified it was standard under Kansas Highway Patrol procedure to conduct an inventory search "[w]hen there's going to be an

8

arrest of the driver [and] we're going to impound the vehicle if it doesn't have insurance or registration as well." Cripe similarly testified that he performed an inventory search of Sharpnack's vehicle because "an arrest was made, and there was no other legal driver on the scene for the vehicle. There was no insurance for the vehicle and the tag did not belong to it and the vehicle was partially in the roadway." Although neither officer produced any documentation of the Kansas Highway Patrol policy regarding inventory searches, the State cited K.S.A. 8-1570 as a statute that authorized the impoundment of Sharpnack's vehicle. In pertinent part, that statute provides:

> "(b) Any police officer is hereby authorized to remove or cause to be removed to a place of safety any unattended vehicle illegally left standing upon any highway . . . in such position or under such circumstances as to obstruct the normal movement of traffic.
> "(c) Any police officer is hereby authorized to remove or cause to be removed to the nearest garage or other place of safety any vehicle found upon a highway when:
> . . . .
> (3) . . . the person driving or in control of such vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before a judge of the district court without unnecessary delay." K.S.A. 8-1570.

During that hearing, Sharpnack's attorney argued that Cripe's inventory search of her vehicle was pretextual and took particular issue with "[t]he fact that [Cripe] wasn't able to provide the Court with a detailed inventory [of her vehicle]," contending that was "evidence that the search of the car [did not] comply with the inventory search policies."

The district court rejected Sharpnack's position, stating:

> "With regard to the inventory search, both officers testified that it was policy and also in their training to perform inventory searches when a vehicle is going to be impounded and in this case the vehicle had to be impounded due to no registration, the tags belonged to a Ford Taurus, there was no insurance, no proof of insurance, no valid driver's license that was presented, no one that could move the car, and, in addition, [the

9

vehicle] was parked on the shoulder and couldn't be just left in that position on the roadway.

"So I don't believe there was a ruse to try to find something other than just making sure that there was some itemization of the items within the vehicle and certainly, in this case, Ms. Sharpnack was concerned about the items. . . . I believe these inventory searches are for the person that owns a vehicle or driving that vehicle to ensure there hasn't been any kind of loss of items when the vehicle is stored or impounded."

In her brief, Sharpnack again argues that Cripe's inventory search of her vehicle was unreasonable because it "failed to satisfy the criteria for a valid inventory search." Sharpnack focuses on the discrepancy between Cripe's generalized listing of her jewelry stock and his specific catalog of the truck's detritus—an onion, one black glove, an empty Gatorade bottle, and empty cigarette packages. Cripe admitted that his inventory report would not have offered much protection in the event of a theft or loss.

The State responds that the troopers did, in fact, follow their agency's prescribed procedure. LaRow testified that the normal policy was to impound a vehicle when the driver did not have proper registration and insurance, and Cripe stated his agency's policy was to perform an inventory search on each vehicle being impounded. The State asks that we compare this case with the one considered by the Kansas Supreme Court in *Shelton*.

In *Shelton*, sheriff's deputies approached a van "parked in the middle to right-hand side" of a rural road and discovered the defendant asleep behind the wheel. 278 Kan. at 288. When they roused the driver and asked to see his license, he presented a Kansas identification card instead. After verifying the driver's status with dispatch, a deputy arrested the defendant for operating a vehicle while his license was revoked. Since the defendant driver was arrested and no one else was immediately available to take charge of the vehicle, the deputies contacted a towing company to remove and impound the van. The deputies then undertook an inventory search of the van and developed a list of contents, although one of them later admitted there were items in the van that were not on

10

their list. Among the items found in that search were backpacks with marijuana, methamphetamine, and electronic scales.

Because the deputies did not include every item of value in the van in their inventory and did not offer alternative dispositions for the van, Shelton argued the inventory search was merely a pretext upon which to base an investigatory search. The Kansas Supreme Court confirmed that "impoundment is lawful if there are 'reasonable grounds' for impoundment" and found that the facts of that case presented reasonable grounds. 278 Kan. at 295-96. The court noted: "The van was illegally parked in a rural intersection and the defendant's lawful arrest left the vehicle unattended. Department policy dictated that the vehicle be impounded under this situation. The location of the vehicle, a rural intersection, did not render itself to an immediate lawful disposition of the van." 278 Kan. at 296-97.

In addition, the court rejected Shelton's argument that the officer's inventory search had been a "ruse" for an investigatory search. Even though the officer failed to document every item in the defendant's vehicle, the court commented that "[o]fficers are permitted to exercise judgment in conducting an inventory search and it does not have to be conducted in an all or nothing fashion." 278 Kan. at 300.

Here, we have an inventory that, as in *Shelton,* was incomplete and perhaps somewhat eccentric in the items recorded. Had there been a theft or other loss of some item of value from Sharpnack's truck, Cripe acknowledged the minimal protection his accounting would have offered. The quality of the list, however, is not the principal measure to use in assessing whether the inventory search was no more than a ruse. The question upon which to base that determination is the reasonability of the impoundment itself, *before* the search and list. If there was a proper basis for impoundment, the inventory search and list follow, done for the reasons discussed above. That search ideally would be careful and complete. A poorly conducted inventory generates its own

11

potential consequences, but retroactive invalidation of the impoundment is not among them.

LaRow and Cripe were authorized to impound Sharpnack's vehicle if it was "in such position or under such circumstances as to obstruct the normal movement of traffic," or if Sharpnack was "arrested for an alleged offense for which the officer is required by law to take the person arrested before a judge of the district court without unnecessary delay." K.S.A. 8-1570(b) and (c)(3). Testimony from both officers established that Sharpnack's "vehicle was partially in the roadway" and thus was liable to block traffic. Along with Sharpnack's arrest, that provided the authority to impound Sharpnack's truck and conduct an inventory search.

Considering the totality of the circumstances, we find LaRow had reasonable suspicion to stop Sharpnack's truck and the inventory search was supported by the reasonable impoundment of the truck. We find no error in the district court's decision to deny the motion to suppress.

*Sufficiency of the evidence for possession of methamphetamine*

Sharpnack next argues the State failed to present sufficient evidence to prove she possessed methamphetamine. When a criminal defendant challenges the sufficiency of evidence, we review all evidence in the light most favorable to the State. We will uphold a conviction if, based on the evidence presented, we are convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015). We do not reweigh the evidence or assess the credibility of witnesses. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016).

At trial, Sharpnack contended she did not have exclusive control of her vehicle on the date of her arrest because of the theft of the truck she had reported more than 3

12

months earlier. She argued that if she had known methamphetamine was in her vehicle, she would not have encouraged the officers to do an inventory search and that this behavior should point to the thief, rather than her, as the source of the bag of methamphetamine and the tin with the pipes found beneath the driver's seat. And, she points out that in cases when drugs are found in a vehicle with more than one person, "mere presence in the vehicle, without more, would not sustain [a] conviction for possession." *State v. Faulkner*, 220 Kan. 153, 160, 551 P.2d 1247 (1976).

The State observed that over 3 months had passed between the return of her truck and her arrest during which the thief did not have access, and during her stop and arrest, Sharpnack never told either LaRow or Cripe that her truck had been stolen. The State also pointed to the testimony about how she grew noticeably anxious as the inventory search proceeded. These facts, the State asserted, are contrary to the notion that Sharpnack did not have exclusive possession of her vehicle and proved that she knew the methamphetamine was under her driver's seat. After hearing those arguments, the jury found Sharpnack guilty of possession of methamphetamine.

K.S.A. 2016 Supp. 21-5706(a) provides: "It shall be unlawful for any person to possess any opiates, opium or narcotic drugs, or any stimulant . . . or a controlled substance analog thereof." To prove possession of a controlled substance, the State must show that the defendant had control over the substance with knowledge of and an intent to have such control. *State v. Johnson*, 33 Kan. App. 2d 490, 502, 106 P.3d 65 (2004). A person may have possession exclusively, jointly with another person, or constructively when the defendant has some measure of access and a right of control. *State v. Boggs*, 287 Kan. 298, 313, 197 P.3d 441 (2008). As with other crimes, the State may prove possession using circumstantial evidence. *State v. Washington*, 244 Kan. 652, 654, 772 P.2d 768 (1989) ("[P]ossession of a controlled substance may be . . . constructive as where the drug is kept by the accused in a place to which he has some measure of access and right of control.").

13

If a defendant does not have exclusive control over his or her vehicle, Kansas courts consider additional factors that, when taken together, could "provide a sufficient inference of knowing possession to support the verdict." *Faulkner*, 220 Kan. at 160. These factors can include: "A defendant's proximity to the area where the drugs were found, the fact that they were in plain view, the proximity of his belongings to the drugs, and his previous participation in the sale of drugs . . . ." *State v. Anthony*, 242 Kan. 493, 502-03, 749 P.2d 37 (1988). Courts have also found a defendant's incriminating statements and suspicious behavior helpful for this analysis. *State v. Beaver*, 41 Kan. App. 2d 124, 129, 200 P.3d 490 (2009).

Neither party disputes that Sharpnack was the sole occupant of her vehicle on the date of her arrest. This fact by itself is sufficient to distinguish this case from those cited by Sharpnack in her brief. Cripe found the bag with methamphetamine under the driver's seat and testified at trial that illegal narcotics are "[m]ost commonly found under the driver's seat, between seats, center console and glove compartment. Typically within reach of the driver or owner of said narcotics."

Also relevant was Sharpnack's own conduct. After recovering her truck, she went to the police and made a point of informing the officer taking the report that when she got the truck back and looked through it, she found it contained items that were not hers (two empty 5-gallon jugs, one with cat litter, plus some cards in the glove box that she then realized were hers after all). When Bernick asked whether she had "noticed anything else in the car that [did not] belong to her," Sharpnack said no. Further, during Cripe's inventory search, Sharpnack became noticeably anxious and pressed the officer to list her stock of jewelry as "miscellaneous metal."

The substantial period that had passed between Sharpnack recovering her truck and her arrest by LaRow was sufficient alone to support a jury's finding that her possession was exclusive. Sharpnack also represented to Bernick that, other than the

14

items she told him about, she had noticed no other items that were not hers. That evidence that she had done some examination of the truck when she got it back also could provide support for a finding that the methamphetamine was hers. Viewing the evidence in the light most favorable to the State, we find a rational jury could have found Sharpnack guilty beyond a reasonable doubt of the possession charge.

*Jury instruction that paraphernalia included baggies; absence of instruction on determining whether an item constitutes paraphernalia*

As her third issue, Sharpnack contends the district court's jury instruction for the drug paraphernalia charge erroneously directed the jury to find that baggies constituted drug paraphernalia. She also asserts the district court should have given an instruction to assist the jury in deciding whether an object was drug paraphernalia.

When reviewing challenges to a district court's jury instructions, Kansas courts follow a multistep analysis:

> "'(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless . . . .'" *State v. Woods*, 301 Kan. 852, 876, 348 P.3d 583 (2015).

*Reviewability*

Reviewability concerns our appellate jurisdiction and whether the defendant objected to the jury instruction at trial. *State v. Simmons*, 295 Kan. 171, 175, 283 P.3d 212 (2012). We find no impediment to our exercise of jurisdiction, and Sharpnack

15

acknowledges that she did not object to the paraphernalia instruction at trial, nor did she propose or request an instruction to guide the jury's determination about what constitutes paraphernalia. When a party fails to object to a jury instruction at trial but challenges that instruction on appeal or asserts for the first time on appeal a claim of error in the failure to give an instruction, appellate courts review the district court's conduct for clear error. K.S.A. 2016 Supp. 22-3414(3). Therefore, Sharpnack "'must firmly convince [this court] that the giving of [a different] instruction would have made a difference in the verdict.'" *State v. Soto*, 301 Kan. 969, 984, 349 P.3d 1256 (2015).

*Legally appropriate*

We next apply an unlimited review standard to consideration of the legal appropriateness of the jury instruction.

At trial, the district court instructed the jury as follows:

"Instruction No. 7
   "The defendant is charged in Count 2 with unlawfully using drug paraphernalia. The defendant pleads not guilty.
   "To establish this charge, each of the following claims must be proved:
   "1. The defendant used a baggie as drug paraphernalia to store, contain, or conceal methamphetamine.
   "2. This act occurred on or about the 18th day of January, 2013, in Shawnee County, Kansas.
   "'Drug paraphernalia' means all equipment, and materials of any kind which are used or primarily intended or designed for use in storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance.
   "'Drug paraphernalia' includes:
      "(1) Plastic baggies."

16

Sharpnack argues this instruction "was legally improper and invaded the province of the jury by simply instructing it that a baggie was paraphernalia, when whether a baggie was, in fact, paraphernalia should have constituted a question of fact for the jury." Sharpnack's argument is the same as the one made by the defendant in *State v. Keel*, 302 Kan. 560, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016), where Keel raised the same complaint about an instruction that was identical in all material aspects. The instruction here was drawn directly from PIK Crim. 4th 57.180 (2015 Supp.), adapted for the facts of the case. The *Keel* instruction was taken from the predecessor pattern instruction, PIK Crim. 3d 67.40.

In her brief, Sharpnack discusses *Keel* and acknowledges that the Supreme Court approved the use of the instruction she now challenges. She contends, however, that the critical factor present in *Keel*, and missing here, was an additional instruction apparently drawn from what is now PIK Crim. 4th 57.170 (2015 Supp.) (based, in turn, on K.S.A. 2016 Supp. 21-5711), which begins: "In determining whether an object is drug paraphernalia, you shall consider, in addition to all other relevant factors, the following: . . . ." The pattern instruction then continues with a long list of factors to be included only as they may be supported by the evidence.

Sharpnack focuses solely on the absence in her case of the supplementary instruction with the statutory factors for determining paraphernalia, but *Keel* did not require use of that instruction along with PIK Crim. 4th 57.180 for the latter to be acceptable. The court in *Keel* recognized that, standing alone, the instruction that "'[d]rug paraphernalia' shall include, but is not limited to: (1) Pipes, (2) Bongs," could be read to instruct the jury that pipes and bongs are paraphernalia. 302 Kan. at 569. But the court also looked to the elements instruction for the crime of unlawfully possessing with the intent to use drug paraphernalia, now PIK Crim. 4th 57.100 (2015 Supp.), as well as the statutory factors instruction, emphasizing the need for all instructions to be read in context. When considered in context, *Keel* held the challenged instruction "simply

17

defined which objects the State was including in its accusation of possessing drug paraphernalia." 302 Kan. at 570. The critical point was that the instructions taken together informed the jury that it had to find the pipes or bong—or, in this case, plastic baggies—were used as accessories to illegal drug activities. See 302 Kan. at 570.

That analysis from *Keel*, which was the same used by that court in *State v. Sisson*, 302 Kan. 123, 351 P.3d 1235 (2015), may be applied to our present case. In Instruction 7, the district court clearly told the jury it must find Sharpnack "used a baggie as drug paraphernalia to store, contain, or conceal methamphetamine." Mere possession of a plastic baggie was not sufficient to prove that element of the crime; its use to store, contain, or conceal an illegal drug also was required. In addition, the district court included PIK Crim. 4th 57.180 as part of Instruction 7, following the elements of the crime. That included not only the part to which Sharpnack objects but also its use-oriented preamble, which informed the jury that "'[d]rug paraphernalia' means all equipment, and materials of any kind *which are used or primarily intended or designed for use*" in one or more activities related to controlled substances. (Emphasis added.)

Even without an instruction drawn from PIK Crim. 4th 57.170, listing statutory factors to determine what may be paraphernalia, the essential requirement from *Keel* and *Sisson* was present in this case. Read as a whole, the district court's Instruction 7 clearly required more than a rote acceptance that the possession of a plastic baggie completed the crime. Use of a plastic baggie for the *purpose* charged—"to store, contain, or conceal methamphetamine"—was needed to prove the crime.

This is not the first time this court has considered this argument about this instruction, and panels of this court have consistently rejected the argument Sharpnack now asserts in her brief. See *State v. Miller*, No. 109,716, 2015 WL 3632029, at *9 (Kan. App. 2015) (unpublished opinion), *rev. denied* 303 Kan. 1080 (2016); *State v. Palmer*, No. 110,624, 2015 WL 802733, at *12-13 (Kan. App.) (unpublished opinion), *rev. denied*

18

302 Kan. 1018 (2015); *State v. Bowser*, No. 107,692, 2013 WL 1010579, at *3-4 (Kan. App. 2013) (unpublished opinion), *rev. denied* 302 Kan. 1012 (2015).

We find Instruction 7, as given by the district court, was legally appropriate.

*Factually appropriate*

An instruction is factually appropriate if there is some evidence that would justify convicting the defendant under that instruction. See *State v. Armstrong*, 299 Kan. 405, 432, 324 P.3d 1052 (2014). As Sharpnack does not address this part of the analysis, we may proceed to clear error.

*Clear error*

As previously noted, to prove clear error Sharpnack must firmly convince this panel "'that the jury would have reached a different verdict had the instruction error not occurred.'" *State v. Berney*, 51 Kan. App. 2d 719, 729-30, 353 P.3d 1165 (2015) (Leben, J., concurring). We have found no error in the district court's instruction, let alone clear error. Even if, for purpose of analysis, we were to assume error in giving the instruction, we note the jury found Sharpnack guilty of possessing the methamphetamine contained in the plastic bag that they found was paraphernalia. Under those circumstances, we cannot find the jury would have reached a different verdict had the district court not given the instruction she now challenges on appeal. See *Miller*, 2015 WL 3632029, at *9. Sharpnack has failed to show either error, or clear error, in the district court's Instruction 7 on the paraphernalia charge.

*Failure to instruct on nonexclusive possession of the truck*

Sharpnack next asserts a second case of instructional error by the district court, contending that the court erred when it failed to give the jury an instruction on

nonexclusive possession of a vehicle. As for the previous section, we exercise unlimited review for the first two steps of the analysis and, for the third step, determine whether there was sufficient evidence, viewed in the light most favorable to the defendant, that would have supported the instruction. *Woods*, 301 Kan. at 876.

*Reviewability*

Sharpnack failed to propose a nonexclusive possession instruction for the district court's consideration or to object to the omission of an instruction on nonexclusive possession. As above, therefore, we review the district court's instructions for clear error, and Sharpnack "'must firmly convince [this court] that the giving of [a different] instruction would have made a difference in the verdict.'" *Soto*, 301 Kan. at 984.

*Legal and factual appropriateness*

The district court gave the following jury instruction regarding possession of methamphetamine:

"Instruction No. 6
        "The defendant is charged in Count 1 with unlawfully possessing methamphetamine. The defendant pleads not guilty.
        "To establish this charge, each of the following claims must be proved:
        "1. The defendant possessed methamphetamine.
        "2. This act occurred on or about the 18th day of January, 2013, in Shawnee County, Kansas.
        "'Possession' means having joint or exclusive control over an item with knowledge of and the intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control."

Even though the district court's instruction was consistent with PIK Crim. 4th 57.040 (2016 Supp.), Sharpnack argues that an additional instruction regarding

20

nonexclusive possession of an automobile was also required, because she "did not have exclusive control over the truck in which the drugs were found." She contends the district court should have given a "nonexclusive-possession-of-an-automobile" instruction because, "[b]eyond the fact that the drugs were found in [her] extremely cluttered and messy truck, no other evidence tied her specifically to the possession of the drugs and the use of paraphernalia."

Sharpnack asserts that the district court should have given an instruction that implemented the factors set forth in both *Anthony* and *Beaver*, specifically, PIK Crim. 3d 67.13-D. The fourth edition of the criminal pattern instructions contains no corresponding instruction.

The courts in both *Anthony* and *Beaver* considered facts very different from those in this case. In *Anthony*, the defendant, already on probation for possession of cocaine, was working at his mechanic's shop when his girlfriend told him she was going to his trailer to clean. She did not disclose to him that she also was taking cocaine and paraphernalia to prepare some packets of drugs for a friend. Her brother arrived and they used drugs together. Other friends arrived wanting to buy cocaine. And she was hiding the drugs and paraphernalia when Anthony got home from work. Within a few minutes, while Anthony was still wearing his hat and coat, the police arrived with a search warrant. Shortly after that, Anthony's girlfriend came out from a room about 15 feet away from him, with baggies of marijuana, packets of cocaine, and a $20 bill.

In *Beaver*, the defendant did not live in the home where a search warrant was executed. He was there, however, when the police arrived with the warrant and was detained near the back door, not far from the kitchen table. The officers accounted for the occupants of the home and then undertook the search. On the kitchen table and visible in an open drawer, the officers found: a digital scale, money, and bags containing a crystal substance.

Here, the only evidence of possession of Sharpnack's truck by someone other than her was her report of the theft over 3 months prior to her arrest. More significantly, after she had recovered her truck, when she went to speak with an officer, she particularly told him about items she had found when she got the truck back that did not belong to her. Clearly, Sharpnack made some effort to check her truck and identify objects that had not been there before it was taken. And, when she was asked whether she had noticed other items in the truck that were not hers, she told him no, arguably drawing a line under her claim of contents from external sources. Moreover, as her truck was being searched, Sharpnack did not mention to LaRow and Cripe that her truck had been stolen.

Even when viewed in the light most favorable to Sharpnack, her representation to Bernick about finding the foreign objects that appeared in her truck while it was missing, plus the passage of over 3 months, plus her failure to mention the theft to the troopers during the search, all work against her claim of nonexclusive possession. If we were to find that it would have been legally appropriate to give an instruction of the type she now claims should have been given, the facts of the case do not support a finding that it would have been factually appropriate.

*Clear error*

If we assume, for the purpose of analysis, that the instruction Sharpnack now claims was erroneously omitted was both legally and factually appropriate, we do not find the omission would constitute clear error.

Sharpnack's defense at trial was that the car thief placed the methamphetamine inside her vehicle. Throughout trial, defense counsel pointed to Sharpnack's conduct during the inventory search and reasoned that a guilty person would not have encouraged officers to thoroughly document the property inside her vehicle. However, the State rebutted this defense with evidence that Sharpnack never informed Cripe or Trooper

22

LaRow that her car had previously been stolen and highlighted the marked change in Sharpnack's behavior as the inventory search progressed. It also presented evidence that Cripe discovered the bag of methamphetamine under the driver's seat in Sharpnack's vehicle, which coincided with Cripe's testimony that, in his experience, drugs were normally found close to the driver.

Although the district court did not instruct the jury on nonexclusive possession, much of the evidence presented to the jury involved the question of whether Sharpnack knew the methamphetamine was in her vehicle. Therefore, even without an instruction, the nature of Sharpnack's defense and the State's response compelled the jury to consider the issue of exclusive possession. We are not "firmly convinced," therefore, that the jury would have reached a different verdict if an instruction on nonexclusive use had been given.

*Failure to add requested language to instructions for the possession crimes*

Sharpnack's fifth appeal issue is again a claim of error in the instructions. Accordingly, the same legal framework applies as we used in review of the other two instruction issues. This time, however, Sharpnack raised this issue with the district court, so in the final step, if we find error, we review for harmless error, rather than clear error. *Woods*, 301 Kan. at 876.

*Legal and factual appropriateness*

Sharpnack claims here that the district court committed error when it rejected additional language she proposed to add to the instructions for the possession crimes, which she acknowledges the district court had framed as recommended in the pattern instructions. Sharpnack proposed adding the phrase: "knowledge of the presence of the controlled substance [or the paraphernalia] with the intent to exercise control is

23

essential." That requested language is found in *State v. Galloway*, 16 Kan. App. 2d 54, 63, 817 P.2d 1124, *rev. denied* 249 Kan. 777 (1991).

The district court refused to modify the instructions to add the additional language, stating:

> "Well, [*Galloway*] is a 1991 case. PIK looks at the pattern instructions criminal area on an annual basis. There's been a lot of time for PIK to be amended since '91 should PIK in the collective wisdom of that group believe it would be necessary to add some additional definition or additional clarification; furthermore, the definition of possession is a statutory definition found at 21-5701(q), that's exactly what we have in the statute. So I would deny the request of the defendant to add that additional sentence."

On appeal, Sharpnack argues the language from *Galloway* "was required to assert [her] defense theory" that the car thief left the methamphetamine in her vehicle. She maintains the additional language was needed to emphasize to the jury that it needed to find "that she *knew* the contraband was in her car and she *simultaneously* intended to *control* it." (Emphasis added.)

We are unable to discern any meaningful distinction between the language proposed by Sharpnack and the language of K.S.A. 2016 Supp. 21-5701(q), which states: "'Possession' means having joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." That statutory definition is contained verbatim in PIK Crim. 4th 57.040, which the district court followed. The Kansas Supreme Court "strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to [jury] instructions." *State v. Barber*, 302 Kan. 367, 377-78, 353 P.3d 1108 (2015). The modification Sharpnack requested would have offered only a slightly rephrased version of the statutory language that was already there. Since we do not find the modification

24

was legally appropriate, we do not need to proceed further in the analytical framework for Sharpnack's claimed error.

*Prosecutorial error*

As her sixth claim of error, Sharpnack contends the prosecutor committed misconduct twice in closing arguments when he referred to facts not in evidence.

*The statements*

In the first of those instances, the prosecutor said the following, to which no objection was made:

"Now in these definitions, there are some terms that I would like to go over with you briefly. One of the ways someone can possess something is by having exclusive control over that item. That's part of one of the ways. *Well, we know on January 18th, 2013, the defendant had exclusive control over the methamphetamine in her vehicle*. She was the only one in the car, no one else was there, no one else was jointly holding onto it with her . . . ." (Emphasis added.)

Sharpnack submits the part asserting she had exclusive control was error because "the evidence showed that [she] had not exclusively possessed the truck; rather, a thief had also accessed it and had left items behind inside the truck."

Defense counsel did object to the second of the statements, in the following exchange:

"[Prosecutor:] Basically, use your common sense. You're allowed to. Please, we ask you to do it. Meth is illegal, you can't buy it legally, but you have to—usually people purchase it as Trooper LaRow explained and people who use meth treat meth like gold. It

25

is the most important thing to them. They know exactly where it is at all times. They don't just leave it behind *because if you can test it, you can smoke it*.

"[Defense Counsel]: Objection, facts not in evidence.

"[The Court]: I would sustain on that objection. I would order the jurors to disregard that last statement of counsel.

"[Prosecutor]: People who use meth aren't going to leave it behind. They're going to know where it is. They're going to make sure they have access to it just like you with gold or money or something valuable to you. So it's just not logical, doesn't make sense that someone would just leave this baggy of meth behind in a car that they've stolen knowing that the car could be taken from them at any time . . . ." (Emphasis added.)

Sharpnack argues there had been no evidence to support the "if you can test it, you can smoke it" assertion.

*The standard for review*

The Kansas Supreme Court recently revised the process for appellate review of what was previously characterized as "prosecutorial misconduct"—now, prosecutorial error. *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016). Applying this new framework for analysis, appellate courts engage in a two-step review, which the court said "can and should be simply described as error and prejudice." 305 Kan. at 109.

For the first step, to assess whether the prosecutor committed error:

"[T]he appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." 305 Kan. at 109.

26

If the appellate court finds error, the court described the second step in this way:

"[T]he appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but when 'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' *State v. Sprague*, 303 Kan. 418, 430, 362 P.3d 828 (2015)." 305 Kan. at 109.

*The first statement was not error; the second statement was error, but harmless*

The prosecutor's first statement averred that "we know" Sharpnack had exclusive control over the methamphetamine when she was stopped by LaRow. Sharpnack's issue with that is simply her disagreement based on her defense that she was unaware of the baggie under her seat because it was left by the unknown thief. Kansas courts have held that "when a case turns on which of two conflicting stories is true, parties may advocate for reasonable inferences based on evidence suggesting that certain testimony is not believable." *State v. Hart*, 297 Kan. 494, 505, 301 P.3d 1279 (2013). The prosecutor's comment was fair argument for a reasonable inference—from the State's viewpoint—drawn from the evidence. Sharpnack argued the evidence and inferences differently. The prosecutor did not commit any error in the first statement.

Simply put, there was no support in the evidence for "if you can test it, you can smoke it," and that statement was error. So, we must determine whether the statement

27

prejudiced Sharpnack's due process rights to a fair trial. In *Sherman*, our Supreme Court admonished appellate courts to:

> "[R]esist the temptation to articulate categorical pigeonholed factors that purportedly impact whether the State has met its *Chapman* burden. Appellate courts must simply consider any and all alleged indicators of prejudice, as argued by the parties, and then determine whether the State has met its burden—*i.e.*, shown that there is no reasonable possibility that the error contributed to the verdict. The focus of the inquiry is on the impact of the error on the verdict." 305 Kan. at 110-11.

In its response, the State argues that, if there was error in this statement, the district judge's admonition resolved the matter, noting the Kansas Supreme Court's position that: "We have held that where the trial court sustains an objection and admonishes the jury to disregard the prosecutor's improper comment, reversal is not required unless the remarks are so prejudicial as to be incurable. [Citation omitted]." *State v. Foster*, 259 Kan. 198, 211, 910 P.2d 848 (1996). The State contends the brief, if erroneous, comment should not be deemed "incurable."

We agree with the State. The fact that the prosecutor's comment was error was apparent to all. Defense counsel immediately objected; the district judge immediately sustained the objection; and the judge followed with an admonition to the jury to disregard the statement. Looking at "any and all alleged indicators of prejudice," *Sherman*, 305 Kan. at 111, we see nothing that makes this error incurable, and we find the State has met its burden of showing there is no reasonable possibility that the error contributed to the verdict. Given the focus in the trial on the argument about "exclusive control" versus "access by the thief," there is no reasonable possibility that this comment by the prosecutor, taken alone, and after an admonition to the jury, affected the verdict.

28

*Cumulative error*

Finally, Sharpnack submits that, even if no single error justifies reversal of her convictions, the cumulative effect of all the alleged errors requires that her convictions be overturned.

As discussed above, we have found no error in any of the respects upon which Sharpnack has based her appeal. Hence, there was no cumulative error.

Affirmed.